UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGLO AMERICAN INVESTMENTS, LLC d/b/a PIZZA PEDDLER,<br><br>     Plaintiff,<br><br> v.<br><br>UTICA FIRST INSURANCE COMPANY,<br><br>     Defendant. | CIVIL ACTION<br><br>No. 08-483 |

Pollak, J.                                    February 26, 2009

**OPINION**

  Plaintiff Anglo American Investments, doing business as the restaurant Pizza Peddler ("plaintiff" or "Pizza Peddler"), brings this action against its insurance company, defendant Utica First Insurance, alleging that Utica First breached its contract obligations and acted in bad faith when it declined to defend or indemnify Pizza Peddler in a tort action brought in the Chester County Court of Common Pleas. The matter comes to this court pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332. Now before the court is Utica First's motion to dismiss Pizza Peddler's complaint. For the reasons that follow, Utica First's motion will be granted.[1]

---

[1] The court notes that Utica First filed a reply brief supporting its motion on May 27, 2008. However, Utica First neither sought nor received permission to file this brief in accordance with Local Civil Rule 7.1(c). The court did not consider this submission in

## I.  FACTS

The underlying tort action was brought by Robert Occhuzzo, who had a physical altercation with a Pizza Peddler employee, Stephen Frayne, on August 20, 2005. Occhuzzo and some friends were patrons at the Pizza Peddler, a restaurant located in West Chester, Pennsylvania.  According to Occhuzzo's complaint in the Chester County Court of Common Pleas, Occhuzzo made a comment to one of his companions about a young woman who was also in the restaurant at that time.  A waiter informed Occhuzzo that the woman was the girlfriend of Frayne, who was working that evening.  Some time later, Occhuzzo and his companions left the restaurant, and Occhuzzo went to his car. Frayne, though still "on the clock" at Pizza Peddler, left the restaurant and stood behind Occhuzzo's car, blocking Occhuzzo from pulling out and leaving.  Frayne began screaming obscenities and threatening violence to Occhuzzo and his companions. Occhuzzo got out of his car and told Frayne to calm down and go back to work.  Frayne moved toward Occhuzzo, still screaming.  Occhuzzo "made further attempts to calm Frayne," but Frayne then "intentionally and suddenly, without provocation, reason, or justification, repeatedly struck Mr. Occhuzzo with a closed fist about his left eye and face."  Occhuzzo Compl. ¶ 16.  Mr. Occhuzzo suffered physical injuries, including bruising, swelling, bleeding, and a cut to his right eye requiring five stitches.

On September 20, 2005, Occhuzzo's attorney sent a letter to Pizza Peddler, stating

---

evaluating the motion for dismissal.

that he represented Occhuzzo and that he wished to resolve any claims Occhuzzo might have against Pizza Peddler.  Compl. Ex. A.  Pizza Peddler forwarded this letter to Utica First, its insurance provider.  Utica First responded on September 23, 2005.  Compl. Ex. B.  The letter informed Pizza Peddler that because of exclusions in the insurance policy, Utica First would not be providing coverage for Occhuzzo's claims.

Occhuzzo filed a complaint against Pizza Peddler and Frayne on May 9, 2006 in the Chester County Court of Common Pleas.  The first two counts, battery and assault, are alleged against Pizza Peddler and Frayne.  The third count alleges intentional infliction of emotional distress against both Pizza Peddler and Frayne.  Count four, against Pizza Peddler only, alleges negligent supervision.  The fifth count alleges negligence against Frayne only.

Pizza Peddler sent Occhuzzo's complaint to Utica First, again seeking a defense and indemnification under the insurance policy.  On May 23, 2006, Utica First responded, indicating that, as noted in the September 2005 letter, because of certain exclusions to the insurance policy it would not provide a defense or indemnification.  Pizza Peddler then hired private counsel to defend against Occhuzzo's claims.[2]

On January 31, 2008, Pizza Peddler filed a complaint against Utica First in this court.  The first count of Pizza Peddler's complaint alleges breach of contract, and the second count alleges bad faith denial of coverage under 42 Pa. Cons. Stat. § 8371,

---

[2]The status or disposition of the state court action is not part of the record in this case.

including allegations of bad faith failure to defend, indemnify, and investigate. In lieu of answering, Utica First moved for dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6), contending that it had no duty to defend or indemnify Pizza Peddler and that therefore Pizza Peddler's complaint does not state a claim upon which relief can be granted.

## II. DISCUSSION

In order to determine whether plaintiff's complaint in this court has stated claims on which relief can be granted, the court must determine whether, as a matter of law, Utica First had a duty to provide Pizza Peddler with a defense against Occhuzzo's complaint. As the Third Circuit has explained, "[u]nder Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (internal citations omitted). The insurer's obligation to defend is determined solely by the allegations of the complaint in the action, and if even a single claim in the complaint is potentially covered, the insurer must defend all claims until there is no possibility that the plaintiff could recover on a covered claim. *Frog. Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). A court may not look past the complaint in reviewing whether the obligation to defend has been triggered. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). If an insurer seeks to avoid its duty to defend under the

policy on the basis of a stated exclusion, the insurer bears the burden to prove the applicability of that exclusion. *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). Any ambiguities in the policy language must be construed in favor of the insured, and where terms are unambiguous they must be given their plain meaning. *St. Paul Fire and Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991).

If any of the claims in Occhuzzo's complaint could potentially come within the coverage of the Pizza Peddler's insurance policy, Utica First had a duty to provide a defense in the state court proceeding. To determine whether this is indeed the case, the court must review the scope of the insurance policy Pizza Peddler purchased from Utica First and then examine the allegations in the Occhuzzo complaint to ascertain if coverage is potentially triggered.

**A.     The Policy**

Though Pizza Peddler did not attach a copy of the policy to its complaint, the court may still review the policy without converting the present motion to dismiss into one for summary judgment.[3] The policy is the basis of plaintiff's complaint and is expressly referenced in plaintiff's allegations. "Although a district court may not consider matters

---

[3]A copy of the policy was attached to Utica First's motion to dismiss. See docket entries 8, 9, 10. Pizza Peddler also quoted the relevant language from the "Assault & Battery Exclusion" portion of the policy in its "Memorandum of Law in Opposition to Defendant's Motion to Dismiss." See docket entry 12.

extraneous to the pleadings, a document *integral to* or *explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis in original).  Because plaintiff's claims "could not be evaluated without some reference to" the policy, the court will consider the policy and is not required to convert the instant motion into one for summary judgment.  *Angstadt v. Midd-West School Dist.*, 377 F.3d 338, 342 (3d Cir. 2004).

The parties seem to agree that the only part of the policy that is at issue is the "Assault & Battery Exclusion."  Neither side points to any other section of the lengthy contract as relevant.  The "Assault & Battery Exclusion" provides:

> Notwithstanding anything contained herein to the contrary, it is understood and agreed that this policy excludes any and all claims arising out of any assault, battery, fight, altercation, misconduct or any other similar incident or act of violence, whether caused by or at the instigation of, or at the direction of the insured, his employees, customers, patrons, guests or any cause whatsoever, including, but not limited to claims of negligent or improper hiring practices, negligent [sic] improper or non-existent supervision or employees, patrons or guests and negligence in failing to protect customers, patrons or guests.

Def.'s Ex. A-2 at 28.

This court agrees with the significant number of other courts in Pennsylvania that have found similar "assault and battery" exclusions to be clear and unambiguous.  *See Certain Underwriters at Lloyd's v. Brownie's Plymouth*, 24 F. Supp. 2d 403, 405 (E.D.

Pa. 1998); *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 428 (E.D. Pa. 1999); *Acceptance Ins. Co. v. Seybert*, 757 A.2d 380, 383 (Pa. Super. Ct. 2000); *First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92, 95 (3d Cir. 1996) (affirming district court decision that had applied plain meaning of assault and battery exclusion). Moreover, though plaintiff notes the general principle of Pennsylvania insurance law requiring that any ambiguities in the language of an insurance contract be construed in favor of coverage, plaintiff does not argue that the language in this contract is ambiguous. Because the court finds the language to be unambiguous and no party contends otherwise, the language of the exclusion will be given its plain meaning.

**B.     The Complaint in the State-Court Action**

The first count of Occhuzzo's complaint alleges that Frayne committed an intentional battery, for which Occhuzzo seeks relief from Frayne, and also from Pizza Peddler, presumably under a respondeat superior theory. The second count similarly seeks recovery from Frayne and Pizza Peddler for Frayne's alleged commission of assault. The third count seeks recovery from Frayne and Pizza Peddler for Frayne's intentional infliction of emotional distress. The fourth count is directed only at Pizza Peddler and alleges that Pizza Peddler negligently supervised Frayne and permitted Frayne's conduct to occur. The fifth count is directed only against Frayne, and alleges that Frayne acted negligently by failing to prevent himself from attacking customers.[4]

---

[4] The court expresses no views on the merits of any of the counts in Occhuzzo's complaint under state law.

The first three counts set forth intentional torts alleged to have been committed by Frayne against Occhuzzo. The exclusion provides that the policy "excludes any and all claims arising out of any assault, battery, [or] fight. . . whether caused by or at the instigation of, or at the direction of the insured, his employees, [or] customers." The plain meaning of the exclusion applies and precludes coverage for these intentional torts. *See Brownie's Plymouth*, 24 F. Supp. 2d at 405-6 (finding similar assault and battery exclusion to preclude coverage for claims that "cannot be construed. . . in any other way than as stating a claim for assault and battery").

Pizza Peddler does not contend that Frayne's actions did not constitute an assault or battery or that Occhuzzo's claims, as a factual matter, fall outside the assault and battery exclusion. Rather, Pizza Peddler argues that the exclusion "was intended to exclude coverage for direct responsibility and not indirect responsibility" and "is silent as to any allegations for liability under the theory respondeat superior." Pl.'s Br. in Opp'n at 5. However, this argument must fail when viewed in light of the plain language of the exclusion, which covers "any and all claims" stemming from an assault. The language does specifically reference claims of negligent supervision but notes that the exclusion is not limited to such claims. Nothing in the language of the exclusion supports plaintiff's contention that coverage is available for "direct responsibility" and not for "indirect responsibility." Coverage is unavailable to plaintiff, under the exclusion, for either type of claim if the claim "aris[es] out of any assault, battery, fight, altercation, misconduct or

any other similar incident or act of violence. . . ." The plain language of the exclusion covers the intentional torts alleged in the first three counts of Occhuzzo's complaint.

The exclusion also specifically precludes coverage for claims of "negligent [sic] improper or non-existent supervision of employees, patrons or guests and negligence in failing to protect customers, patrons or guests." The fourth count of the Occhuzzo complaint, which alleges that Pizza Peddler "breached its duty to properly supervise its employee by. . . allowing Frayne to go into the parking lot to attack a customer," falls squarely within this exclusion.

It is not the case that an insurance company will always be able to retreat behind an assault and battery exclusion where a patron of a bar or restaurant is injured by another patron or an employee; there are instances where an insurer has been found to have a duty to defend an insured from claims arising out of these types of altercations occurring on the insured's premises. *See, e.g.*, *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421 (E.D. Pa. 1999); *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649 (Pa. Super. Ct. 1994). In these cases, the underlying tort complaints had stated alternative theories of recovery, making claims both based on allegations of intentional assault and battery and also on allegations of additional negligent conduct on the part of the insured. For example, in *Sphere Drake*, two individuals were injured in a bar by a police officer who fired his weapon into the bar while responding to an altercation. The injured individuals filed a complaint in the Philadelphia Court of Common Pleas, asserting several claims

9

against the bar, including a claim that the bar's owners or employees had negligently padlocked the kitchen door, preventing employees and patrons from leaving the establishment. *Sphere Drake*, 35 F. Supp. 2d at 425. In evaluating whether the bar's insurance company was obligated to provide a defense to the bar in the state-court proceedings, the district court found that though the complaint alleged intentional torts, for which the exclusion would ordinarily preclude coverage, the inclusion of the allegation that the bar had negligently trapped people in the bar brought the entire complaint out of the ambit of the assault and battery exclusion.

Similarly, in *Weiner*, the plaintiff in the original action alleged that a co-owner and an employee of a bar struck him in the neck and injured him. The plaintiff alleged alternative theories of liability, seeking recovery from the bar because "his injuries were either the result of an 'accident,' or intentional or negligent acts of the insured" bar. 636 A.2d at 652. The court found that the assault and battery exclusion in the bar's insurance policy would not exclude injuries resulting from an accident, and the inclusion of this allegation meant that the insurer needed to defend the bar on all claims "until such time as the claim is confined to a recovery that the policy does not cover." *Id.*

Any reliance Pizza Peddler would place on these cases is unavailing, because Occhuzzo's complaint does not contain any claims that fall outside the assault and battery exclusion. The first three counts allege battery, assault, and intentional infliction of emotion distress resulting from Frayne's "intentional attack." The fourth count, negligent

10

supervision, is also covered by the exclusion. The complaint does not contain a negligence claim against Pizza Peddler comparable to the "padlocked door allegation" or a claim that Frayne's actions were an accident. *See Unionamerica Ins. Co. v. Lim*, 2000 WL 1056450, *3 (E.D. Pa. 2000) (distinguishing *Sphere Drake* and *Weiner* and finding no duty on part of insurer to defend restaurant where complaint did not state a cause of action for negligence distinct from the assault and battery and could not allege that injury was an accident).

Count five of Occhuzzo's complaint does include allegations of general negligence, but this claim is pled against Frayne only, in contrast with the complaint in *Sphere Drake*, which alleged direct negligence on the part of the bar, not the assailant. Pizza Peddler's contention that the court should consider it to be pled against Pizza Peddler as well because Occhuzzo could amend his complaint to add Pizza Peddler as a direct defendant in count five is baseless; the court will not speculate as to what Occhuzzo may claim in the future and must focus on the claims that Pizza Peddler is required to defend against now.[5]

---

[5] Count five alleges that Frayne breached his "duty to prevent, refrain, and control himself from attacking customers" when he attacked Occhuzzo. If this count were to have been pled against Pizza Peddler as well, it would seem that such allegations would still appear to have sounded in negligent supervision, which is covered by the exclusion. *See First Oak Brook*, 93 F.3d at 95-96 (noting that the exclusion in *Weiner* did not exclude negligence claims and so distinguishing that policy from one excluding coverage arising from "harmful or offensive contact between or among two or more persons," which could include injuries arising out of a negligent act).

11

In conclusion, Occhuzzo's complaint contains no claims against Pizza Peddler that fall outside the assault and battery exclusion.  Defendant therefore was under no duty to defend Pizza Peddler in the state-court action.  Because defendant did not have a duty to provide a defense to Pizza Peddler, defendant, as a matter of law, did not breach its contract with Pizza Peddler.  Similarly, defendant did not act in bad faith in violation of 42 Pa. Cons. Stat. § 8371 when it refused to provide a defense.  *See Frog, Switch & Mfg. Co.*, 193 F.3d at 751 n.9 (rejecting claim for bad faith denial of coverage where there was no duty to defend).  Utica First's motion to dismiss Pizza Peddler's complaint is therefore granted in an order accompanying this opinion.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGLO AMERICAN INVESTMENTS, LLC d/b/a PIZZA PEDDLER, <br><br> Plaintiff, <br><br> v. <br><br> UTICA FIRST INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION <br><br> No. 08-483 |

**ORDER**

**AND NOW**, this 26th day of February, 2009, for the reasons set forth in the accompanying opinion, it is hereby **ORDERED** that the motion of defendant Utica First Insurance Company to dismiss the complaint of plaintiff Anglo American Investments, LLC d/b/a/ Pizza Peddler is **GRANTED**.

BY THE COURT:

  /s/ Louis H. Pollak  
Pollak, J.

13